

**SO ORDERED.**

**SIGNED this 31 day of December, 2024.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                          CASE NO. 24-00511-5-DMW

PETER ERIC STEINKE
ESTATE OF ADRIANA STEINKE

                                                                 CHAPTER 13

        DEBTORS


**MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING CONFIRMATION
OF CHAPTER 13 PLAN AND
ORDER DENYING MOTION FOR RELIEF FROM STAY**

        This matter comes on to be heard upon the Chapter 13 Plan ("Amended Plan") filed by

Peter Eric Steinke ("Mr. Steinke") and the Estate of Adriana Steinke ("Ms. Steinke") (collectively,

"Debtors") on September 20, 2024 and Harris Ventures, Inc's Objection to Confirmation of

Chapter 13 Plan filed by Harris Ventures, Inc. ("Harris") on October 7, 2024, as well as the Motion

of Harris Ventures, Inc. for Relief from the Automatic Stay ("Motion for Relief from Stay") filed

by Harris on October 8, 2024 and the Debtors' Response to Motion for Relief from Stay of Harris

Ventures, Inc. filed by the Debtors on October 15, 2024.

        The court conducted a hearing in Raleigh, North Carolina on October 16, 2024.  Cort I.

Walker, Esq. appeared for the Debtors, Stephanie Goodbar, Esq. appeared for Harris, and Michael

B. Burnett, Esq. ("Trustee") appeared as Chapter 13 trustee.  At the conclusion of the hearing, and based upon the pleadings, the arguments of counsel and the case record, the court denied confirmation of the Amended Plan and denied the Motion for Relief from Stay for the reasons stated on the record at the hearing.  The court entered an Order Denying Confirmation of the Amended Plan on October 16, 2024.

This Memorandum Opinion supplements the findings of fact and conclusions of law announced on the record and supports the October 16, 2024 Order Denying Confirmation.  This Order also memorializes the court's denial of the Motion for Relief from Stay.  The court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the court has the authority to hear and determine the matter pursuant to 28 U.S.C. § 157(b)(1).  The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on February 16, 2024 ("Petition Date").  The Trustee is serving as Chapter 13 trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

3.      The Debtors listed on Schedule A/B filed with the court real property located at 6424 Northwyck Place in Raleigh, North Carolina ("Property") and held by the Debtors as tenants by the entirety.  The Debtors valued the property at $371,000.00 and claimed a homestead exemption in the Property of $35,000.00 each pursuant to N.C. Gen. Stat. § 1C-1601(a)(1).  The Debtors also claimed all equity in the Property, estimated to total $175,766.96, as exempt pursuant

2

to 11 U.S.C. § 522(b)(3)(B) and North Carolina law pertaining to property held as tenants by the entirety.

4.      The Debtors initially filed a Chapter 13 Plan ("Initial Plan") on March 1, 2024. Confirmation of the Initial Plan was delayed due to outstanding tax returns.[1]

5.      Harris filed a proof of claim on March 21, 2024 asserting a claim ("Claim") in the amount of $35,637.55.  Harris attached a Default Judgment against Steinke Investments NC, LLC and Mr. Steinke and asserted the Claim to be secured by the Property.  The Debtors objected to the Claim, noting the Debtors owned the Property as tenants by the entirety and asserting the Default Judgment did not attach to the Property.  On May 13, 2024, the court entered a Consent Order determining the Claim did not attach as a judicial lien against the Property and reclassifying the Claim as a general unsecured claim against Mr. Steinke.

6.      On September 12, 2024, counsel for the Debtors filed a Notice that Ms. Steinke had died.  The Debtors subsequently filed the Amended Plan, proposing to pay one joint unsecured claim in full and to pay remaining general unsecured creditors a dividend of approximately sixteen percent.  The disparity in payment apparently was based upon the Debtors' joint ownership of the Property on the Petition Date and the existence of equity in the Property that was not exempt from the Debtors' joint creditors.

7.      Harris seeks relief from the automatic stay of 11 U.S.C. § 362(a) in order to allow the Default Judgment to attach to the Property, noting that upon Ms. Steinke's death, Mr. Steinke became the sole owner of the Property. *See* N.C. Gen. Stat. § 41-64(a) (2020).  Harris argues that cause exists to modify the stay, because the Debtors' claimed tenants by the entirety exemption

---

[1] 11 U.S.C. § 1325(a)(9) requires as a condition to confirmation that a debtor has filed all applicable Federal, State, and local tax returns as required by 11 U.S.C. § 1308.  In addition, 11 U.S.C. § 521(e)(2)(A)(i) and Rule 4002(b)(3) of the Federal Rules of Bankruptcy Procedure impose requirements upon a debtor to provide tax returns or transcripts to the trustee within a specified period.

was extinguished when Mr. Steinke became the sole owner of the Property under North Carolina law, and but for the bankruptcy case, the Default Judgment would have attached to the Property by operation of law.  Harris objects to confirmation of the Amended Plan on the grounds that it fails to account for non-exempt equity in the Property.

8.       Mr. Steinke argues that the claimed exemptions in the Property are final for purposes of this bankruptcy case, and Harris should not be granted stay relief to allow the Default Judgment to attach to the Property.  Mr. Steinke asserts that despite Ms. Steinke's death, the tenancy by the entirety exemption and treatment of the Property as being held in both Debtors' names should be considered when analyzing the propriety of the Amended Plan.

*Automatic Stay*

9.       Absent any effect of Title 11 of the United States Code, under North Carolina state law, "[o]nce the tenancy by the entirety has been dissolved, and the real property has been converted into another form of an estate, a creditor's judgment lien [against an individual spouse] may attach to [that] spouse's interest in the new estate." *Martin v. Roberts,* 177 N.C. App. 415, 419, 628 S.E.2d 812, 815 (2006).

10.       If it were not for the bankruptcy filing, the Default Judgment would have attached to Mr. Steinke's interest in the Property; however, the bankruptcy filing changes the rights of a judgment creditor.  The automatic stay provisions of § 362 prevent that remedy.  The court is unable to find cause to lift the automatic stay to allow Harris to elevate the status of its claim.

*Transformation of Mr. Steinke's Interest in the Property and
the Effect on the Claimed Exemption*

11.       The commencement of a bankruptcy case creates an estate consisting of, subject to certain limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  Section 522(b)(3)(B) of the Code allows a

debtor to exempt from property of the estate "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(3)(B).

12.    Relevant to exemption determination, the reference within § 522(b)(3)(B) to applicable nonbankruptcy law "suggests that state law determines the termination of the exemption." *In re Hmok*, 663 B.R. 674, 680 (Bankr. W.D.N.C. 2024).  The tenancy by the entireties terminated under North Carolina law upon the death of Ms. Steinke.  No exemption can exist without a property interest that fits within that exemption.  Although the general rule is that the petition date is the operative date for purposes of § 522,[2] when the entireties ownership extinguished, the related exemption under § 522(b)(3)(B) also perished.

13.    The Fourth Circuit has held that under § 541(a), property owned as tenants by the entirety at filing which later becomes solely owned by one spouse in fee simple is property of the surviving spouse's estate. *In re Ballard*, 65 F.3d 367, 372 (4th Cir. 1995) (determining that "[Wife's] death released her surviving spouse, and thus, his bankruptcy estate, from all conditions of the tenancy conceived to preserve unity of entireties property. . . . More simply put, when the dust settles, by operation of law, [Husband's] bankruptcy estate holds a fee simple interest in the proceeds of the sale of their home."). This operation of law occurs even where former entireties property is claimed as exempt under § 522(b)(3)(B). *See In re Cordova*, 73 F.3d 38 (4th Cir. 1996) (debtor's property, owned as entireties property on the date of filing and exempted as such, later became debtor's solely owned fee simple property and property of the bankruptcy estate in fee

---

[2] *See In re Grimes*, No. 15-06465-5-DMW, 2016 WL 3356288, at *3 (Bankr. E.D.N.C. June 9, 2016) (looking to the petition date in the context of a lien avoidance action).

simple pursuant to 11 U.S.C. § 541(a)(5), where the debtor and her spouse divorced within 180 days of the petition date).[3]

14.     With the change in ownership of the Property, Mr. Steinke's interest transformed from an entireties interest to one in fee simple.  Accordingly, the exemption also changed from tenancy by the entirety, which no longer exists, to the claimed homestead exemption under N.C. Gen. Stat. § 1C-1601(a)(1).   The change in ownership interest "render[ed] the [entireties] exemption inapplicable." *Cordova*, 73 F.3d at 41.

*Plan Amendment and Confirmation*

15.     The change in Mr. Steinke's interest in the Property affects confirmation under 11 U.S.C. § 1325.  Under this section the court shall confirm a plan if, among other requirements,

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).  This confirmation provision, referred to as the "best interests of creditors test" or "liquidation test" and considered during the hearing on the Amended Plan, requires creditors to receive as much under a Chapter 13 plan as they would under a Chapter 7 liquidation. The Amended Plan does not account for Mr. Steinke's fee simple interest in the Property.  Instead, the Amended Plan treats the asset as being fully exempt from non-joint creditors under the terminated tenancy by the entireties exemption.

16.     The Fourth Circuit has not specifically ruled on the issue of when the liquidation test should be calculated to determine "the value, *as of the effective date of the plan*, of property to be distributed under the plan." 11 U.S.C. § 1325(a)(4) (emphasis added).  Some courts hold that

---

[3] In *Cordova*, the debtor claimed her property as exempt under the former version of § 522(b) governing the entireties exemption, § 522(b)(2)(B).

the petition date should be considered the effective date of the plan. *See, e.g., In re Goudreau*, 530 B.R. 783, 788 (Bankr. D. Kan. 2015); *In re Green*, 169 B.R. 480, 482 (Bankr. S.D. Ga. 1994). This court disagrees and instead sides with the courts that have concluded that "[r]eason dictates that a chapter 13 plan must actually be confirmed before it can have an effective date." *In re Cannella*, No. 14-21398, 2015 WL 1208679, at *2 (Bankr. D. Kan. Mar. 12, 2015).   On the supposition that "effective" is synonymous with "operative," "[t]he plan is operative when its terms are binding on the debtor and creditors—i.e., when the court confirms it." *In re Buettner*, 625 B.R. 78, 80 (Bankr. E.D. Wis. 2021) (citing 11 U.S.C. § 1327(a)).   "[T]he better practice is to establish valuation for the purposes of the hypothetical liquidation test as of the date of the confirmation hearing." *In re Andrews*, No. 01-03532-W, 2001 WL 1806981, at *2 (Bankr. D.S.C. Oct. 5, 2001).

17.     In the context of the reference within 11 U.S.C. § 1325(b)(1) to "the effective date of the plan," the United States Supreme Court has held that the effective date "is the date on which the plan is confirmed and becomes binding." *Hamilton v. Lanning*, 560 U.S. 505, 518, 130 S. Ct. 2464, 2474, 177 L. Ed. 2d 23 (2010) (citing 11 U.S.C. § 1327(a)).

18.     Treating the effective date as the confirmation date ensures an accurate snapshot of circumstances before a plan becomes binding on debtors and creditors.  This approach also aligns with Fourth Circuit precedent addressing post-confirmation modifications.  The Fourth Circuit has made it abundantly clear that upon liquidation, a debtor may be required to pay the post-petition appreciated value of the debtor's petition date property interest to pay a higher dividend to unsecured creditors. *See In re Murphy*, 474 F.3d 143, 152-153 (4th Cir. 2007) (holding the bankruptcy court did not abuse its discretion when it modified debtor's confirmed plan to provide for full payment of pending unsecured claims after debtor's condominium appreciated from

$155,000.00 on the petition date, and subsequently sold for $235,000.00 post-confirmation).  As this court's neighboring district recently stated in the context of a post-confirmation plan modification, it would be irreconcilable with the Fourth Circuit's *Murphy* holding to use an earlier date than the time of modification when determining the valuation date to use for purposes of § 1325(a)(4). *In re Adams*, 654 B.R. 703, 713 (Bankr. M.D.N.C. 2023).

19.     Judge Pamela W. McAfee of this court analyzed the possible timing of the application of § 1325(a)(4) in the context of post-confirmation plan modifications in *In re Hunsucker*, 652 B.R. 658 (Bankr. E.D.N.C. 2023).  She noted that the "majority of courts hold that the 'effective date' of a modified plan is the date of the modification, and the liquidation analysis must be reapplied as of the time of the modification." 652 B.R. at 667 (citing *In re Barbosa*, 236 B.R. 540 (Bankr. D. Mass. 1999), *aff'd*, 235 F.3d 31 (1st Cir. 2000); *In re Auernheimer*, 437 B.R. 405 (Bankr. D. Kan. 2010); *In re Moran*, No. 08-60201-RLJ-13, 2012 WL 4464492 (Bankr. N.D. Tex. Sept. 25, 2012)).

20.     In *Hmok*, Chief Judge Laura T. Beyer of the United States Bankruptcy Court for the Western District of North Carolina dismissed the debtors' argument that the "liquidation analysis of 11 U.S.C. § 1325(a)(4) is fixed at the petition date and does not change." 663 B.R. at 681.  The court noted the expansion of the bankruptcy estate under 11 U.S.C. § 1306 and the inclusion of the proceeds from the post-confirmation sale of property, resulting in a modified plan with a new liquidation analysis. *Id.* at 682-85.

21.     The court in *Adams* was also faced with a motion to modify the confirmed plan after the debtor realized sale proceeds from real property that had appreciated in value. 654 B.R. at 706.  The court noted that just because the effective date for purposes of § 1325(a)(4) in a post-confirmation modification is the date of modification, that conclusion does not necessarily answer

the question of whether the liquidation test includes assets obtained by the debtor post-petition. *Id.* at 713. The court found that "interests that have come into the estate post-petition under § 1306" are excluded from the liquidation test at modification. *Id.* Taking a slightly different approach than the *Hmok* court regarding the inclusion of sale proceeds in the estate, the *Adams* court found that notwithstanding the exclusion of post-petition property, the proceeds attributable to appreciation are attributable to the property interest held on the petition date. *Id.*

22.     The lack of more specificity in § 1325(a)(4) creates a conflict between 11 U.S.C. § 1306[4] and 11 U.S.C. § 348(f)[5] when analyzing what property would be liquidated in a hypothetical Chapter 7 case. Courts relying on the language of § 348(f) in determining the "best interests of creditors" appear to assume that § 1325(a)(4) incorporates by reference § 348(f). *See In re Taylor*, 631 B.R. 346 (Bankr. D. Kan. 2021). While the court is skeptical of that interpretation, the instant matter does not require that determination, because Mr. Steinke has not acquired new property.

23.     As in *Adams*, Mr. Steinke had an interest in the Property on the Petition Date. Upon the death of Ms. Steinke, Mr. Steinke did not obtain a new property interest; rather, the whole of the estate by the entireties in the Property remained in Mr. Steinke. "[T]he unique character of entireties property is such that the death of one spouse does not vest the other with interests he or she did not already hold." *Ballard*, 65 F.3d at 371. The entire estate remains in the survivor "not because he or she is vested with any new interest therein, but because in the first instance he or she took the entirety which, under the common law, was to remain to the survivor." *Id.* (examining Virginia's tenancy by the entirety law and quoting *Vasilion v. Vasilion*, 192 Va. 735, 740, 66

---

[4] Where assets acquired post-petition would be included in the liquidation test as property of the estate.

[5] Where assets acquired post-petition would be excluded from the liquidation test, because in a hypothetical good faith conversion, property of the estate would only "consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A).

S.E.2d 599, 602 (1951)).[6]  After the death of Ms. Steinke, the corresponding exemption changed to increase the recovery for non-joint creditors.  A confirmable plan must value Mr. Steinke's fee simple interest as of confirmation for purposes of the liquidation test.

24.     Mr. Steinke failed to carry his burden of meeting the requirements for confirmation of the Amended Plan, specifically the liquidation test requirement under § 1325(a)(4), resulting in the Order Denying Confirmation.

25.     As noted *supra*, no cause exists to modify the automatic stay as requested by Harris; now therefore,

It is ORDERED, ADJUDGED and DECREED that the Motion of Harris Ventures, Inc. for Relief from the Automatic Stay be, and hereby is, denied.[7]

END OF DOCUMENT

---

[6] Less than four months after its *Ballard* decision, the Fourth Circuit stated in *Cordova* that "[h]aving observed that the definition of the term 'interest' as used in § 541(a) is significantly broader than that implied by Cordova, we conclude that Cordova's sole ownership of a fee simple interest is a separate property interest distinct from the tenancy-by-the-entirety interest that she previously held. The interests are distinct because of the greater variety of rights vested in Cordova as the sole owner of the property." 73 F.3d at 42.  *Cordova* cited *Ballard* multiple times and dealt with a Chapter 7 debtor, a post-petition divorce and the provision of 11 U.S.C. § 541(a)(5) governing interests in property acquired within 180 days of the petition date.  The *Ballard* decision and the Fourth Circuit's determinations therein are more apposite to the matter before the court.

[7] As confirmation of the Amended Plan was denied in the Order dated October 16, 2024, that decree does not need to be restated in this document.
