IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:25-CV-00146-M

| | |
|---|---|
| PETER ERIC STEINKE, et al., <br><br> Appellants, <br><br> v. <br><br> HARRIS VENTURES, INC., <br><br> Appellee. | ORDER |

 Peter Eric Steinke and the Estate of Adrianna Steinke (collectively, "the Steinkes") appeal from the Bankruptcy Court's order declining to confirm their First Amended Plan. The Bankruptcy Court rejected the plan on the grounds that it did not comply with 11 U.S.C. § 1325(a)(4), which requires that "the value, as of the effective date of the plan, of property to be distributed" be greater than or equal to the amount that would be paid if the estate was liquidated under Chapter 7 of the Bankruptcy Code. The sole issue on appeal is whether "the effective date of the plan" refers to the date on which the Steinkes filed their bankruptcy petition or the date on which the plan was confirmed. Because the Bankruptcy Court did not err in finding that the "effective date of the plan" refers to its confirmation date, the challenged order is affirmed.

**I. Background**

 On February 16, 2024, the Steinkes filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina. DE 1.[1] When they filed the petition, the Steinkes owned a single-

---

[1] Unless otherwise noted, all citations to docket entries in this section refer to the docket sheet reflected in *In re Steinke*, Case No. 24-00511-5-DMW (Bankr. E.D.N.C.).

family home located at 6424 Northwyck Place in Raleigh, North Carolina ("the Property"). *See* DE 13 at 3 (Schedule A/B Form). The Property, jointly owned by the Steinkes as tenants by the entirety, was valued at $371,000.00. *Id.* The Steinkes claimed that this property was exempt from the bankruptcy estate pursuant to 11 U.S.C. § 522(b)(3)(B)[2] and N.C. Gen. Stat. § 1C-1601(a)(1).[3] *Id.* at 12–13.

On March 21, 2024, Harris Ventures, Inc. ("Harris Ventures") filed a proof of claim, asserting an interest in the Steinkes' estate in the amount of $35,637.55. *See* DE 17 at 1. Harris Ventures attached to his claim a judgment obtained against Eric Steinke in the State Court of Chatham County, Georgia and claimed that it was secured by the Property. *See id.* The Steinkes objected, contending that because they owned the Property as tenants by the entirety, the judgment could not attach as a judicial lien. *Id.* On May 13, 2024, the Bankruptcy Court issued a consent order determining that the judgment did not attach and reclassifying the claim as an unsecured general claim against Eric Steinke. DE 25.

The Steinkes filed a proposed Chapter 13 confirmation plan on March 1, 2024. DE 14. But, due to outstanding tax returns, a confirmation hearing for the plan was delayed. *See* DE 18, 19. On September 12, 2024, before a confirmation hearing could be held, counsel for the Steinkes filed a notice advising that Adrianna Steinke had died. *See* Minute Entry dated Sep. 12, 2024. The Steinkes subsequently filed the First Amended Plan, which is at issue in this case. DE 34.

---

[2] "Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate . . . any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law[.]" § 522(b)(1), (3)(B).

[3] "Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of the creditors . . . [t]he debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence[.]" § 1C-1601(a)(1).

Harris Ventures objected to confirmation of the First Amended Plan on numerous grounds. DE 35. As relevant here, it argued that the plan no longer satisfied the requirements of § 1325(a)(4) because upon Adrianna Steinkes' death, the Property passed by operation of law to Peter Steinke in fee simple, thus substantially increasing the value of the bankruptcy estate. DE 35 at 2–3. The Steinkes argued that their claimed exemptions were final as of the petition date and that the Property should be treated as if it were still held as a tenancy by the entirety for purposes of assessing the First Amended Plan. DE 45 at 1–2.

The Bankruptcy Court held a hearing on October 16, 2024, and thereafter denied confirmation of the First Amended Plan on the grounds that it failed to comply with § 1325(a)(4). *See* DE 48 (Order Denying Confirmation), 62 (Memorandum Opinion in Support). Central to the Bankruptcy Court's order was its finding that under § 1325(a)(4)'s "hypothetical liquidation test," the court must determine the value of the bankruptcy estate "as of the date of the confirmation hearing." *Id.* at 7 (quoting *In re Andrews*, No. 01-03532-W, 2001 WL 1806891 (Bankr. D.S.C. 2001)). Consequently, it found that "[a] confirmable plan must value Mr. Steinke's fee simple interest[,]" which "increase[d] the recovery [available] for non-joint creditors." *Id.* at 10.

After two more proposals, the Bankruptcy Court confirmed the Steinkes' Third Amended Plan. DE 68. The Steinkes appealed and certified the following question as the sole issue on appeal:

> Whether the Bankruptcy Court erred in denying confirmation of the Debtors' plan for failing to comply with 11 U.S.C. § 1325(a)(4) based on the legal conclusion that "as of the effective date of the plan" means the confirmation date as opposed to the petition date or the date the first payment came due.

3

DE 76 at 2; *see also* Fed. R. Bankr. P. 8009(a)(1) ("The appellant must file with the bankruptcy clerk . . . a statement of the issues to be presented[.]") (cleaned up).[4]

## II.   Standard of Review

Under 28 U.S.C. § 158(a), district courts have jurisdiction to consider appeals from a bankruptcy court. A 'bankruptcy court's findings are fact are reviewed for clear error, and conclusions of law are reviewed *de novo*." *In re J.A., Inc.*, 492 F.3d 242, 249 (4th Cir. 2007) (citing Fed. R. Bankr. P. 8013). The Steinkes do not contest the factual findings made by the Bankruptcy Court; their only argument concerns a conclusion of law. Accordingly, the sole issue on appeal must be reviewed *de novo*.

## III.   Discussion

The Steinkes argue that the phrase, "effective date of the plan," as used in § 1325(a)(4), refers to the date on which they filed their Chapter 13 petition. DE 16 at 9. The court disagrees. The plain language of the statute indicates that a plan is effective on the day it is confirmed by the bankruptcy court and, thus, becomes operative.

"Under Chapter 13 of the Bankruptcy Code, individuals with regular income may petition a bankruptcy court for bankruptcy protection and for reorganization of their debts." *In re Litton*, 330 F.3d 636, 640 (4th Cir. 2003). "Unlike debtors who file under Chapter 7 and must liquidate

---

[4] Though the Steinkes' brief alludes to a number of other issues discussed by the Bankruptcy Court, including "post-petition disclosures, exemptions[,] and post-confirmation plan modification[,]" the Steinkes explain that these arguments are intended to provide context for their position on the liquidation test by setting "forth the legal posture [they] would be in if the petition date controls[.]" *See* DE 19 at 4. The court only considers these issues, then, to the extent they aid in its consideration of the certified question on appeal. *See In re Dunlap*, 3:16-cv-00037-RJC, 2017 WL 374915, at *2 (W.D.N.C. Jan. 25, 2017) ("Failure to properly designate an issue for appeal in a Rule 8009 statement can operate as a waiver of that issue . . . An issue is not properly designated when it is not specifically designated in the Rule 8009 statement or cannot be inferred from the issues that were designated.") (citations omitted).

4

their nonexempt assets in order to pay creditors, *see* §§ 704(a)(1), 726, Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income, *see* §§ 1306(b), 1321, 1322(a)(1), 1328(a)." *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010). For a plan to be approved, it must meet several pre-conditions. For one, it must comply with § 1325(a)(4), commonly known as the "best interests of the creditor test" or "liquidation test." That provision requires:

> the value, as of the effective date of the plan, of property to be distributed under the plan account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

§ 1325(a)(4).

The Bankruptcy Code does not define "effective date of the plan," and neither the Supreme Court nor the Fourth Circuit have interpreted the phrase for purposes of the liquidation test. Other federal courts have, and in so doing, have fallen into two separate camps. The first, which commands a notable majority, concludes that "a plan's 'effective date' occurs at confirmation because that is when the plan becomes binding[.]" *See In re Buettner*, 625 B.R. 78, 80–81 (Bankr. E.D. Wis. 2021); *see also In re Cumba*, 505 B.R. 110, 115 (Bankr. D. P.R. 2014) (finding that the proposed plan must be "presently valued to compensate unsecured creditors for the delay in payments they would receive immediately in a liquidation proceeding"); *In re Engle*, 496 B.R. 456, 461 (Bankr. S.D. Ohio 2013) (finding that "application of the liquidation test requires that creditors receive payments having a *present value* at least equal to what they would receive in a chapter 7 case") (emphasis in original); *In re Gibson*, 415 B.R. 735, 738 (Bankr. D. Ariz. 2009) (finding that the effective date "is the date on which the plan becomes final and binding due to a court order confirming the plan"); *In re Hieb*, 88 B.R. 1019, 1020 (finding that "the present value of the deferred payments" must be greater than or equal to the amount "the creditor would receive

immediately in a hypothetical liquidation"); *In re Cannella*, No. 14-21398, 2015 WL 1208679, at *2 (Bankr. D. Kan. Mar. 12, 2015) (noting that "the effective date may remain unknown until the plan is confirmed, because the effective date is normally the date the confirmation order becomes final"). Courts in the second camp conclude that the "effective date of the plan" should instead be considered "the date the Chapter 13 petition was filed[.]" *See In re Goudreau*, 530 B.R. 783, 788 (D. Kan. 2015); *see also In re Smith*, 431 B.R. 607, 611 (Bankr. E.D.N.C. 2010) ("In most cases, the effective date of the plan should be the filing date of the petition."); *In re Green*, 169 F.R. 480, 482 (Bankr. S.D. Ga. 1994) (interpreting "the 'effective date of the plan' as the date the petition was filed").

The court adopts the interpretation reached by the above-described majority. The term, "effective," when used in a statute, order, or contract, is defined by Black's Law Dictionary as "operative." *Black's Law Dictionary* (12th ed. 2024), Westlaw Edge ("in operation at a given time"). A confirmation plan is "operative" on the day "its terms are binding on the debtor and creditors—i.e., when the court confirms it." *Buettner*, 625 B.R. at 80 (citing § 1327)). That is well-illustrated by the facts of this case. The Steinkes submitted a total of four proposed confirmation plans. *See* DE 14, 34, 55, 66.[5] Each included different terms and would have required the Steinkes to pay different sums of money to their unsecured creditors. *See id.* But only the last plan, the Third Amended Plan, was confirmed. The terms of that agreement were not "effective" or "operative" on the petition date. A confirmation plan perforce can only be effective once a bankruptcy court has concluded its proceedings and imbued the terms of the agreement

---

[5] These citations refer to the docket sheet in *In re Steinke*, Case No. 24-00511-5-DMW (Bankr. E.D.N.C.)

6

with the force of law. So, the court finds that the petition date is an inappropriate benchmark against which to conduct the liquidation test.

Two Supreme Court cases bolster this conclusion. In *Hamilton v. Lanning*, the Supreme Court considered § 1325(b)(1)(B), a neighboring provision in the Bankruptcy Code that requires a debtor's projected disposable income to be calculated "as of the effective date of the plan." 560 U.S. 464, 508–09, 518 (2010). In that context, the Supreme Court found that a plan's effective date "is the date on which the plan is confirmed and becomes binding[.]" *Id.* at 518 (citing § 1327(a)). Accordingly, it held that "when a bankruptcy court calculates a debtor's projected disposable income, [it] may account for changes in the debtor's income or expenses that are known or virtually certain at the time of *confirmation*." *Id.* at 524 (emphasis added). If Congress had intended for a different result, the Supreme Court reasoned, it could have "required courts to determine that value as of the *filing* date of the plan[,]" as it had in other provisions of the Bankruptcy Code. *Id.* at 518 (emphasis in original) (citing Fed. R. Bakr. P. 3015(b) and § 1326(a)(1)). Similarly, in *Rake v. Wade*, the Supreme Court considered § 1325(a)(5)(B)(ii), a provision that requires "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [a] claim is not less than the allowed amount of such claim." 508 U.S. 464, 469 (1993). Again, the Supreme Court held that that the "property distributed under a plan on account of a claim . . . must equal the present dollar value of such claims as of the confirmation date." *Id.* The conclusions reached in *Lanning* and *Rake* directly map onto § 1325(a)(4), which uses the same language in the same grammatical context.

The Steinkes resist this conclusion by arguing that the relevant language in *Lanning* is dicta. DE 16 at 16–17; DE 19 at 3. Specifically, they argue that because *Lanning* was centrally concerned with defining how to calculate "projected income" under § 1325(b), the language

7

interpreting the phrase "effective date of the plan" is of limited applicability here. DE 19 at 3. The court disagrees. It is true that lower courts are not generally "bound by dicta . . . of the Supreme Court." *Myers v. Loundon Cnty. Pub. Sch.*, 418 F.3d 395, 406 (4th Cir. 2005). But they "cannot ignore the Supreme Court's explicit guidance simply by labeling it 'dicta.'" *Hengle v. Treppa*, 19 F.4th 324, 346 (4th Cir. 2021). Indeed, lower courts "routinely afford substantial, if not controlling deference to dicta" in a Supreme Court opinion. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 281 (4th Cir. 2019) (en banc). Insofar as such guidance was not "peripheral or so cursory as to suggest the Court gave less than full and careful consideration to the matter[,]" it may be relied on, even if it was not "strictly necessary to the outcome" of that case. *Hangle*, 19 F.4th at 347 (internal quotations omitted). So too is it here. *Lanning*'s interpretation of the phrase "effective date of the plan" was not peripheral to its holding; the Supreme Court only had cause to consider that language because it established the time at which a debtor's projected income was to be measured. Because the plan's "effective date" was interpreted to be its confirmation date, the Supreme Court reasoned that "Congress expected courts to consider postfiling information about the debtor's financial circumstances." *Lanning*, 560 U.S. at 518. This was central to *Lanning*'s holding. Being firmly persuaded that the Supreme Court gave "full and careful consideration" to this question of statutory interpretation, the court gives its analysis substantial weight. *See Hengle*, 19 F.4th at 347.

All this notwithstanding, the Steinkes have not refuted *Lanning*'s central premise that if Congress intended for the value of the bankruptcy estate to be fixed, it could have "required courts to determine that value as of the *filing* date of the plan." *See Lanning*, 560 U.S. at 518. The Steinkes correctly note that numerous provisions in the Bankruptcy Code relate back to the petition date. DE 16 at 11–12; *see* § 541 (creation of the bankruptcy estate); § 362 (imposition of a stay);

8

§ 521(a) (requiring certain disclosures); Fed. R. Bankr. P. 1007(c) (same); § 522(a) (determining the fair market value of property); Fed. R. Bankr. P. 3015(b) (filing a Chapter 13 plan); § 348(f)(1)(A) (property to be included in a conversation from Chapter 13 to Chapter 7). What they ignore, however, is that in virtually all the provisions they cite, the Bankruptcy Code explicitly makes the petition date operative. *See* § 541 ("[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate"); § 362 ("a petition filed under section 301, 302, or 303 of this title . . . operates as a stay"); Fed. R. Bankr. P. 1007(c)(1) ("with the petition or within 14 days after it is filed"); § 522(a) ("as of the date of the filing of the petition"); Fed. R. Bankr. P. 3015(b) ("with the petition or within 14 days after the petition is filed"); § 348(f)(1)(A) ("as of the date of filing the petition"). So, contrary to the Steinkes' position, "[u]sing the petition date to calculate the liquidation test" is not "consistent with other provisions of the Bankruptcy Code." DE 16 at 12. Those other provisions use different language. The language at issue here— "effective date of the plan"—is used by Congress three times in § 1325. *See* § 1325(a)(4), (a)(5)(B)(ii), (b)(1). The Supreme Court has determined the latter two instances refer to the confirmation date, *see Lanning*, 560 U.S. at 518; *Rake*, 508 U.S. at 468, and courts can generally presume that when the same term is used multiple times in the same statute, it "usually has the same meaning[.]" *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). The court concludes as much here. When Congress has intended for the petition date to control, it has said so.

The Steinkes' remaining arguments are equally unavailing. They argue that using the confirmation date to conduct the liquidation test would be "absurd" because it would allow for intervening events between the petition date and the confirmation dates to alter a debtor's financial obligations to his creditors. DE 16 at 17. That might be true, but it changes nothing. The Bankruptcy Code states that a Chapter 13 estate includes property "the debtor acquires after the

9

commencement of the case but before the case is closed, dismissed, or converted" under a different chapter. § 1306(a)(1). In other words, the Bankruptcy Code contemplates that the value of the bankruptcy estate may change after a the original petition is filed. The Steinkes may be right that such a scheme "allows for manipulation by a debtor." *See* DE 16 at 17. "But policy—no matter how strong its appeal—cannot overcome either the statute's plain text or the Supreme Court's construction of the same phrase elsewhere in the same section of the Bankruptcy Code." *Buettner*, 625 F.R. at 81.

## IV. Conclusion

For these reasons, the court finds that under § 1325(a)(4), the "effective date" of a Chapter 13 plan is the date on which it is confirmed. Because the Bankruptcy Court below adhered to that view, it is AFFIRMED.

SO ORDERED this 10th day of March, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE